IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

DISABILITY RIGHTS CENTER OF
ARKANSAS, INC.                                                    PLAINTIFF

V.                                    Case No. 4:13 cv-103-JLH

BAPTIST HEALTH                                                  DEFENDANT

### BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER COMPELLING DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST AND SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, parties must fully answer any Interrogatories and Requests for Production or must provide grounds for objection within thirty (30) days. If a ground for objecting is not stated in a party's answer to an Interrogatory, *then that ground for objecting is waived.* Fed. R. Civ. P. 33(b)(4). After providing its initial answers to Plaintiff's discovery, the Defendant, Baptist Health, has made *additional* arguments and objections concerning DRC's discovery. Assuming Baptist's objections were meritorious, which they are not, Baptist's *additional and untimely* objections have been clearly waived pursuant to Fed. R. Civ. P. 33(b)(4). As a result, DRC will not address or analyze Baptist's *additional and untimely* objections here and neither should the Court if they are raised in Baptist's future Response.

Aside from its untimely objections, Baptist did raise timely objections to DRC's Interrogatories and Requests for Production. As DRC demonstrated in its good faith letters (*See* Exhibits "D" and "H") and as further analyzed below, Baptist's objections are without merit. Therefore, DRC requests that the Court grant its Motion to Compel and award DRC with its attorney fees for having to file said motion.

1

## I. STATEMENT OF FACTS

DRC is the federally mandated Protection and Advocacy System ("P&A") for the State of Arkansas. As the federally mandated P&A, DRC has broad federal authority to advocate for the rights of individuals with disabilities in the state, and to investigate allegations of abuse and neglect when such incidents are reported to us or when we determine that there is probable cause to suspect that abuse and neglect has occurred.

In order to fulfill its mandated duties, the federal P&A laws authorize DRC to access a broad array of records including medical records, information related to deaths, and information related to serious incidents involving individuals with disabilities. *See* Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10805 and 42 C.F.R. 51.41(c); The Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. § 15043 and 45 C.F.R. § 1386.22(c); The Protection and Advocacy for Individual Rights Program of the Rehabilitation Act, 29 U.S.C. § 794e. Consent for release of such records to the P&A is not required following the death of an individual where, as here, the manner of the death provides probable cause to suspect the potential for abuse or neglect. *See Ala. Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492 (11th Cir. 1996); *Ariz. Ctr. for Disability Law v. Allen*, 197 F.R.D. 689, 693 (D. Ariz. 2000).

The same statutes, regulations, and case law cited above authorize DRC to access reports prepared by facilities following investigations of death that describe 1) the incident, 2) the steps taken to investigate, and 3) the information relied upon in making the report. *Iowa Prot. and Advocacy Srv., Inc. v. Rasmussen*, 206 F.R.D. 630 (S.D. Iowa 2002). The P&A's authority to access documents extends to peer review records. *See Mo. Prot. and Advocacy Srv. v. Mo. Dept. of Mental Health*, 447 F.3d 1021 (8th Cir. 2006); *Ind. Prot. and Advocacy Srv. v. Ind. Family*

2

*and Soc. Srv. Admin.,* 603 F.3d 365 (7th Cir. 2010); *Prot. and Advocacy for Persons with Disabilities v. Mental Health & Addiction & Advocacy Serv.,* 448 F.3d 119 (2d Cir. 2006); *Ctr. for Legal Advocacy v. Hammons,* 323 F.3d 1262 (10th Cir. 2003); *Pa. Prot. and Advocacy, Inc. v. Houston,* 228 F.3d 423 (3d Cir. 2000); *Disability Rights N.C. v. Mem'l Hosp. Operating Corp.,* 2013 WL 179034 (M.D. N.C.); *Disability Rights N.C. v. Moses H. Cone Mem'l Hosp. Operating Corp.,* 2013 WL 4854316 (M.D. N.C. 2013); *Conn. Office of Prot. and Advocacy for Pers. with Disabilities v. Kirk,* 354 F.Supp.2d 196 (D. Conn. 2005).

Moreover, P&As, like DRC, are entitled to access records regarding a person who has died within twenty-four (24) hours of a written request for said records. 42 U.S.C. § 15043(a)(2)(J)(ii). Such is the case at bar. The deceased patients died on October 7, 2012; October 29, 2012; and October 31, 2012. Baptist has refused, however, to provide DRC with *any* records to date, despite the clear language of the above regulations, statutes, and case law.

After numerous unsuccessful attempts to obtain access to the records and facilities involved in three (3) restraint-related deaths at Baptist facilities, DRC filed its Complaint seeking declaratory and injunctive relief on March 1, 2013. Baptist filed its answer on March 29, 2013. On October 9, 2013, DRC provided Baptist with *Plaintiff's First Set of Interrogatories and Requests for Production.* DRC granted Baptist's request for a one (1) week extension to respond to the discovery request. Baptist provided DRC with its Response to *Plaintiff's First Set of Interrogatories and Requests for Production* on November 15, 2013. In its responses, Baptist objected to a number of the interrogatories and requests that are discoverable pursuant to Rule 26 of the Federal Rules of Civil Procedure, federal statutes and regulations, and well established case law.

3

On November 22, 2013, DRC provided Baptist with a good faith letter in an attempt to avoid the need for judicial intervention. In its correspondence, DRC informed Baptist that the objections were without merit and provided Baptist with relevant federal regulations, statutes, and analogous case law to support its assertion.  *See* a true and correct copy of DRC's correspondence at Exhibit "D." On December 3, 2013, Baptist responded, indicating it disagreed with DRC's analysis and would therefore not provide DRC with the discovery at issue. *See* a true and correct copy of Baptist's correspondence at Exhibit "F."  In another good faith attempt to resolve the dispute, DRC called Baptist's counsel on December 5, 2013, but Baptist again refused to provide DRC with the pertinent discovery.

On November 25, 2013, DRC propounded *Plaintiff's Second Set of Requests for Production* to Baptist, which contained only two (2) Requests for Production. Again on December 20, 2013, Baptist requested and was granted a three (3) week extension for responding to that discovery request.  Despite this three (3) week extension, Baptist merely objected to both Requests for Production and refused to provide any records. On January 9, 2014, DRC sent additional good faith correspondence to Baptist in an attempt to avoid judicial intervention.  In its correspondence, DRC informed Baptist that the objections were without merit and provided Baptist with relevant federal statutes, regulations, and analogous case law to support its assertion. *See* a true and correct copy of DRC's correspondence at Exhibit "H." For the third time, Baptist refused to produce the requested discovery. As a direct result, DRC was left with no other alternative than to file this Motion.

4

## III. ARGUMENT

### A.    Baptist's Objections Based on HIPAA Privacy Regulations are Without Merit

In *Plaintiff's First Set of Interrogatories and Requests for Production of Documents,* *Interrogatory No. 2* asked Baptist to identify any other deaths or injuries that had occurred at Baptist's facilities over the previous three (3) years where the patient had been restrained or placed in an enclosed bed, including but not limited to incidents where the Arkansas Department of Health or any other entity had conducted an investigation. Baptist objected to the Interrogatory based upon the Health Insurance Portability and Accountability Act (HIPAA) privacy regulation requirements, claiming that HIPAA prohibited Baptist from providing the patient information requested.

Baptist also objected to *Request for Production No. 1* based upon a claim that HIPAA prohibited the disclosure of medical records for the final twelve (12) months of life of each patient involved in this matter.  Baptist further refused to state all of the facts supporting its position that the patients identified in the complaint did not have a disability, which was requested in *Interrogatory No. 6*, and additionally refused to produce the documentation that supported that same position, as was requested in *Request for Production No. 3*, again claiming it was prohibited from disclosure due to HIPAA privacy regulation requirements.

In an effort to resolve the discovery dispute, DRC informed Baptist that its assertions regarding HIPAA's prohibition of these disclosures were without merit.  Nevertheless, Baptist responded by continuing to argue that it does not have to provide the requested answers or documentation due to HIPAA requirements.  In its correspondence to DRC, dated December 2, 2013, Baptist first argued that the HIPAA exception, which DRC noted in its correspondence and will discuss below, does not apply to the requested information because it does not meet the

definition of "record" under 42 U.S.C. § 15043(c).  Baptist failed to provide any supporting

arguments for this position, when in fact the implementing regulation for that statute

unquestionably includes the requested records:

> Individual records to which P&A systems **must have access** under section
> 142(A)(2)(I) (whether written or in another medium, draft or final, including
> handwritten notes, electronic files, photographs or video or audio tape records)
> shall include, but shall not be limited to:
> (1) Records prepared or received in the course of providing intake, assessment,
> evaluation, education, training and other supportive services, including **medical
> records**, financial records, and monitoring and other reports prepared or received
> by a member of the staff of a facility that is providing care or treatment;
> (2) **Reports** prepared by an agency charged with investigating incidents of abuse
> or neglect, injury or **death occurring at a facility** or while the individual with a
> developmental disability is under the care of a member of the staff of a facility, or
> by or for such facility, that describe any or all of the following:
> (i) Abuse, neglect, injury, death;
> (ii) The steps taken to investigate the incidents;
> (iii) Reports and records, including personnel records, prepared or maintained by
> the facility in connection with such reports of incidents; or,
> (iv) Supporting information that was relied upon in creating a report, including all
> information and records which describe persons who were interviewed, physical
> and documentary evidence that was reviewed, and the related investigative
> findings. . . .

45 C.F. R. § 1386.22(b)(1)-(2) (emphasis added).

Moreover, courts that have analyzed the interaction between HIPAA and the P&A

statutes have found that HIPAA does not impair the state designated P&A system's right to

access records from healthcare providers.  For example, in *Prot. and Advocacy System, Inc. v.

Freudenthal*, the court held that HIPAA did not bar a state hospital or state training school from

disclosing protected health information to the state P&A, like DRC, without the authorization of

the individual when the disclosure is authorized by and meets the requirements of the P&A act.

412 F.Supp.2d 1211, 1221 (D. Wy. 2006).  An Ohio district court similarly found that HIPAA

did not prohibit disclosing protected health information to the P&A because such disclosure fell

within the HIPAA exception allowing disclosures as required by law. *Ohio Legal Rights Srv. v. Buckeye Ranch, Inc.*, 365 F.Supp.2d 877, 889–90 (S.D. Ohio 2005).

Additionally, comments within the preamble of HIPAA expressly state that entities may disclose protected health information to the P&A system and that HIPAA will "not impede the functioning of the existing Protection and Advocacy System." 65 FR 82481, 82594 (Dec. 28, 2000). Further, the Office of Civil Rights, which is the federal agency within the United States Department of Health and Human Services charged with enforcing HIPAA, provided express guidance to entities in an answer to a Frequently Asked Question by stating that covered entities are permitted to disclose protected health information to P&A systems.[1]

The HIPAA regulation itself also permits entities to disclose protected health information to health oversight agencies for oversight activities. 45 C.F.R. § 164.512(d). These activities include "audits, civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions; or other activities necessary for appropriate oversight of," among other things, "the health care system" and "[e]ntities subject to civil rights laws for which health information is necessary for determining compliance." 45 C.F.R. § 164.512 (d)(1)(iv). HIPAA defines a health oversight agency as

> an agency or authority of the United States, a State, a territory, a political subdivision of a State or territory, or an Indian tribe, or a person or entity acting under a grant of authority from or contract with such public agency, including the employees or agents of such public agency or its contractors or persons or entities to whom it has granted authority, that is authorized by law to oversee the health care system (whether public or private) or government programs in which health information is necessary to determine eligibility or compliance, or to enforce civil rights laws for which health information is relevant.

---

[1] Office of Civil Rights, Health Information Privacy, Frequently Asked Questions, http://www.hhs.gov/ocr/privacy/hipaa/faq/disclosures_required_by_law/909.html (last updated Aug. 8, 2005).

45 C.F.R. § 164.501. P&A agencies have been recognized as acting in the capacity of a health oversight agency because they have been authorized by federal law to enforce civil rights laws, and they have the authority to investigate abuse and neglect of individuals with disabilities, which makes health information relevant. *See Ohio Legal Rights Srv.*, 365 F.Supp.2d at 891–92. As such, Baptist should have provided the requested information under this HIPAA exception because disclosure would not violate any of the privacy regulation requirements.

Moreover, there is no question that entities are permitted to "disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a). Certainly the statutes and regulations that govern the establishment of the P&A system, as well as the statutes and regulations that set forth the federal mandates that the P&A systems *must* comply with fit into this "required by law" HIPAA exception. Yet Baptist brushes over this HIPAA exception and mistakenly focuses its refusal to provide access to records on the HIPAA exception for judicial proceedings. *See* 45 C.F.R. § 164.512 (e).

Under the judicial proceeding exception, entities are permitted to disclose protected health information in the course of a judicial proceeding in response to a court order or a discovery request. *Id.* Even if there is no court order in place, the entity is still permitted to disclose the protected health information after receiving a discovery request if the entity receives certain "satisfactory assurances." *Id.* There are two ways to provide the entities with "satisfactory assurances." First, the covered entity can receive the satisfactory assurance if the party seeking the protected health information has made reasonable efforts to give notice to the individual whose records it is seeking. 45 C.F.R. § 164.512 (e)(ii)(A). Obviously, in this case,

8

DRC is unable to notify the individuals in question because they are deceased. Therefore, it would be impossible for DRC to provide Baptist with satisfactory assurances in this manner.

The second way that a covered entity can receive the satisfactory assurances is if the parties in dispute over the protected health information have agreed to a qualified protective order, or if the party requesting the information has requested a qualified protective order. 45 C.F.R. § 164.512 (e)(iv). This qualified protective order is defined as follows:

> an order of a court or of an administrative tribunal **or a stipulation by the parties to the litigation** or administrative proceeding that: (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512 (e)(v)(emphasis added). DRC has assured Baptist that the protected health information would be protected from disclosure. DRC has strict confidentiality requirements that it must follow in regards to any records that it receives pursuant to federal regulation. 45 C.F.R. §1386.22(e). In order to comply with the governing regulations, DRC must keep information confidential and must have written policies for access and storage of information. *Id.* Though Baptist claims it has not received the satisfactory assurances needed to meet the disclosure for judicial proceeding exception to HIPAA, the confidentiality requirements explicitly stated within the P&A regulations show that any concerns regarding the use and disclosure of information received are unwarranted. Based upon the above analysis, it is clear that HIPAA does not pose a barrier to entities in disclosing protected health information to P&A systems, and thus does not provide Baptist with a basis for objecting to DRC's discovery requests.

Even if HIPAA were to prohibit Baptist from disclosing the protected health information to DRC, though DRC asserts that it does not, Baptist could have acted in good faith and provided DRC with a redacted copy of the records. *See* 45 C.F.R. § 164.514. Once information has been

9

de-identified, it is no longer considered protected health information.[2]  Though DRC mentioned this alternative in its correspondence to Baptist as a means for Baptist to act in good faith in response to DRC's discovery request, Baptist neither addressed that alternative in its return correspondence nor provided the de-identified information to DRC as requested.  DRC asserts, however, that redaction is unnecessary because DRC is entitled to a non-redacted copy of the records pursuant to the analysis above. Therefore, as HIPAA was the only objection Baptist raised in *Interrogatory No. 6* and *Requests for Production Nos. 1 and 3*, Baptist should be required to provide DRC with complete and non-redacted copies of the requested records sought in its discovery in this matter.

**B.      Other Deaths That Have Occurred at Baptist Facilities Over the Past Three (3) Years Are Relevant to Plaintiff's Claim In This Matter**

In *Interrogatory No. 2*, aside from the HIPAA-based objection raised, Baptist asserted that the identification of any other restraint-related deaths or injuries occurring at Baptist facilities over the past three (3) years was irrelevant and could not lead to discovery of relevant evidence. This argument is clearly baseless.

First, Rule 26 of the Federal Rules of Civil Procedure provides that the scope of discovery extends to "any nonprivileged matter that is relevant to any party's claim or defense." In addition, the rule states that "the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* The information does not have to be admissible at trial to be considered relevant. *Id.*

---

[2] Office of Civil Rights, Health Information Privacy, Understanding HIPAA Privacy, For Covered Entities and Business Associates, Guidance Regarding Methods for De-identification of Protected Health Information in Accordance with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule,
http://www.hhs.gov/ocr/privacy/hipaa/understanding/coveredentities/De-identification/guidance.html#protected (last visited Dec. 11, 2013).

Courts have broadly construed Rule 26 in discovery matters. *See Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978).   Though Rule 26 was amended in 2000 as a means to "signal[] to the parties that they have no entitlement to discovery to develop new claims or defenses," the courts have continued to liberally construe Rule 26. *See TIG Ins. Co. v. Firemen's Ins. Co. of Wash., D.C.*, 718 F.Supp.2d 90, 96 (D. D.C. 2010).   The Advisory Committee recognized the difference between information that is relevant to the claims or defenses of the case and information that is relevant to the subject matter of the case may be difficult to define. Committee Notes to 2000 Amendment to Fed. R. Civ. P. 26. The Committee explicitly stated, however, that even after the latest amendment to Rule 26, "other incidents of the same type, or involving the same product, could be properly discoverable." *Id.*

DRC's request for information pertaining to other restraint-related deaths that occurred at Baptist facilities over the past three (3) years is certainly relevant to the case at hand. First, it is information involving incidents of the same type and involving the same products as the ones directly involved in this case, which is information that the Advisory Committee specifically intended that parties be able to discover. Secondly, Baptist  has asserted in its Answer, as its justification for not allowing access to records, that DRC does not have the probable cause necessary in order to gain access. Though DRC is not required to defend its determination of probable cause to Baptist in order to obtain access to records, it is without question that other incidents of restraint-related deaths in such a short time frame would further support both DRC's claim that access to these records is necessary to conduct an investigation and DRC's argument that its access to the records in question is supported by probable cause.

C.    **Arkansas Peer Review and Quality Assurance Statutes Do Not Prohibit Disclosure of Peer Review Records or Incident Reports to the State P&A**

In *Plaintiff's Second Set of Interrogatories and Requests for Production*, DRC requested copies of any peer review records or incident reports related in any way to the incidents described in the Complaint in this matter. Baptist objected to these requests, basing its objection on the Arkansas peer review and quality assurance statutes. However, this too is meritless, as these statutes provide no basis for objection in this case.

A court's interpretation of a statute begins with the plain language of the statute itself. *See Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 405 (1979) ("It is elementary that '[t]he starting point in every case involving construction of a statute is the language itself.'"); *United States. v. Maswai*, 419 F.3d 822, 824 (8th Cir. 2005) ("Our task in interpreting legislation is to start with the plain meaning of its words."); *United States v. Smith*, 171 F.3d 617, 619 (1999) ("In construing a statute, we look first to the plain meaning of the words of the statute."). The plain language of Arkansas' peer review statute states that "(a)(1) [t]he proceedings and records of a peer review committee *shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are subject to evaluation and review by the committee*." A.C.A. § 20-9-503 (a)(1) (emphasis added). On its face, Arkansas' statute only provides for limited protection of peer review records and is not a complete bar to disclosure as Baptist would like the court to believe. Instead, the statute solely limits the privilege to disclosure in those instances of civil action against the provider arising out of information contained within the peer review committee's review.

All of the federal courts that have considered P&A access to peer review records have determined that the peer review privilege granted by state statute does not apply when a P&A requests access under its authority created by the federal P&A statutes, as the case here. For

12

example, Justice Alito, then Judge, found in *Pa. Prot. & Advocacy, Inc. v. Houston* that peer review reports certainly met the definition of "records" included in the PAIMI statute and rejected the argument that the state peer review privilege statute provided a basis for withholding those records when the P&A requested them.  228 F.3d 423, 425–29 (3d Cir. 2000).  Justice Sotomayor, then Judge, also reached the same conclusion, finding that the plain language of the PAIMI statute included access to peer review records and that the state created peer review privilege did not prohibit disclosure of those records during a P&A investigation.  *Prot. & Advocacy for Pers. with Disabilities v. Mental Health & Addiction Serv.*, 448 F.3d 119, 128–29 (2d Cir. 2006).

The Eighth, Seventh, and Tenth Circuits, as well as the other federal district courts that have taken up the issue, have reached the same conclusion.  *See Mo. Prot. & Advocacy Serv. v. Mo. Dept. of Mental Health*, 447 F.3d 1021 (8th Cir. 2006) (holding that the state P&A had authority to access peer review records and that PAIMI preempted state law to the extent there was a conflict); *Ind. Prot. & Advocacy Serv. v. Ind. Family & Soc. Serv. Admin.*, 603 F.3d 365 (7th Cir. 2010); *Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262 (3d Cir. 2000); *Disability Rights N.C. v. Mem'l Hosp. Operating Corp.*, 2013 WL 179034 (M.D. N.C. Jan. 17, 2013); *Disability Rights N.C. v. Moses H. Cone Mem'l Hosp. Operating Corp.*, No. 1:11CV812, 2013 WL 4854316 (M.D. N.C. Sept. 11, 2013); *Advocacy, Inc. v. Horn*, No. A-08-CA-071-LY, slip op. (W.D. Tex Mar. 26, 2009).

Though all of these cases, with the exception of one, were decided under the access authority granted by PAIMI, there is no doubt that the language of PADD, and by incorporation, PAIR, provides the same access to peer review records.  The statutory language of PADD and

PAIMI is essentially identical in regards to the records that a P&A must be allowed to access.

PADD authorizes the following:

**(I) have access to all records of--**
**(i)** any individual with a developmental disability who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;
**(ii)** any individual with a developmental disability, in a situation in which--
**(I)** the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;
**(II)** the individual does not have a legal guardian, conservator, or other legal representative, or the legal guardian of the individual is the State; and
**(III)** a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect; and
**(iii)** any individual with a developmental disability, in a situation in which--
**(I)** the individual has a legal guardian, conservator, or other legal representative;
**(II)** a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect;
**(III)** such representative has been contacted by such system, upon receipt of the name and address of such representative;
**(IV)** such system has offered assistance to such representative to resolve the situation; and
**(V)** such representative has failed or refused to act on behalf of the individual;
**(J)(i)** have access to the records of individuals described in subparagraphs (B) and (I), and other records that are relevant to conducting an investigation, under the circumstances described in those subparagraphs, not later than 3 business days after the system makes a written request for the records involved; and
**(ii)** have immediate access, not later than 24 hours after the system makes such a request, to the records without consent from another party, in a situation in which services, supports, and other assistance are provided to an individual with a developmental disability.

42 U.S.C. § 15043(a)(2)(I)(emphasis added).

PAIMI authorizes the following:

**access to all records of--**
**(A)** any individual who is a client of the system if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized the system to have such access;

**(B)** any individual (including an individual who has died or whose whereabouts are unknown)--

**(i)** who by reason of the mental or physical condition of such individual is unable to authorize the system to have such access;

**(ii)** who does not have a legal guardian, conservator, or other legal representative, or for whom the legal guardian is the State; and

**(iii)** with respect to whom a complaint has been received by the system or with respect to whom as a result of monitoring or other activities (either of which result from a complaint or other evidence) there is probable cause to believe that such individual has been subject to abuse or neglect; and

**(C)** any individual with a mental illness, who has a legal guardian, conservator, or other legal representative, with respect to whom a complaint has been received by the system or with respect to whom there is probable cause to believe the health or safety of the individual is in serious and immediate jeopardy, whenever--

**(i)** such representative has been contacted by such system upon receipt of the name and address of such representative;

**(ii)** such system has offered assistance to such representative to resolve the situation; and

**(iii)** such representative has failed or refused to act on behalf of the individual.

42 U.S.C. §10805(a)(4)(emphasis added).

It is absolutely clear that the language in both acts offer the same authorization for accessing all records of the covered individuals. The only meaningful difference between PADD and PAIMI is the type of individual covered by the acts. While PADD governs access to the records of individuals with developmental disabilities, PAIMI governs access to the records of individuals with mental illness. Otherwise, the access to records granted by the two is the same. In addition, there is no question that PAIR, too, provides access to peer review records as the language explicitly authorizes the same access as that found in the PADD statutes. 29 U.S.C. §794e (The PAIR system will "have the same general authorities, including access to records and program income, as are set forth in subtitle C of the Developmental Disabilities Assistance and Bill of Rights Act of 2000.").

In the only case to discuss P&A access to peer review records under PADD specifically, the court looked to the analysis in other peer review access cases, even though those cases were

brought under the PAIMI access authority, because the court recognized no distinction between the two acts. *Advocacy, Inc. v. Horn*, No. A-08-CA-071-LY, slip op. (Mar. 26, 2009). The court recognized, as did the parties involved, that the definitions within PADD and PAIMI were "substantially the same. Therefore, the cases cited [discussing access to peer review records] apply equally to claims arising under the PADD Act as the PAIMI Act." *Id.* at fn. 3. The court rejected the argument that the definition of record included in PADD did not extend to peer review records. *Id.* It is not by any means a stretch for the court to reach this conclusion, due to the similarities in the language in both acts as noted above. Thus, the federal case law holding that a P&A should have access to peer review records under PAIMI should apply equally to questions of access under both PADD and PAIR.

Even if the Arkansas peer review and quality assurance statutes were to apply in this situation, which DRC asserts is not the case, those statutes would be preempted by the federal P&A statutes. As noted above, the federal statutes establishing the P&A system authorize the P&A to access a broad array of records in order to investigate incidents of abuse and neglect. This access extends to all records of the individual and to other records relevant to the investigation. *See* 42 U.S.C. § 15043 (PADD); 42 U.S.C. § 10805 (PAIMI); 29 U.S.C. § 794e (PAIR). In addition, PADD, which PAIMI and PAIR were both modeled after, specifically defines record as including:

> (1) a report prepared or received by any staff at any location at which services, supports, or other assistance is provided to individuals with developmental disabilities; (2) *a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at such location, that describes such incidents and the steps taken to investigate such incidents*; and (3) a discharge planning record.

42 U.S.C. 15043(c) (emphasis added).

Arguments that this definition does not include access to peer review records and incident reports directly conflicts with case law that has specifically interpreted the statutes to say otherwise. Federal courts that have considered the issue have found that state peer review statutes excluding access to peer review records are preempted by the federal statutes granting a P&A access to all records of an individual. *See Mo. Prot. & Advocacy Serv.*, 447 F.3d 1021, 1024 (holding that the state law that conflicted with PAIMI was preempted); *Prot. & Advocacy for Pers. with Disabilities*, 448 F.3d 119, 129 (holding that to the extent the state peer review statute conflicts with PAIMI, PAIMI governs); *Ctr. for Legal Advocacy*, 323 F.3d 1262, 1273 (concluding that the state law conflicting with PAIMI was preempted); *Pa. Prot. & Advocacy, Inc.*, 228 F.3d 423 ("PAIMI preempts any state law that gives a healthcare facility the right to withhold such records."); *Disability Rights N.C.*, 2013 WL 179034, \*5 ("Protection and advocacy systems are entitled to access peer review records covered by the PAIMI Act 'irrespective of state law.'"); *Conn. Office of Prot. & Advocacy for Pers. with Disabilities*, 354 F.Supp.2d 196, 202 ("Under the PAMII, a P & A's authority to seek records as provided in that Act expressly preempts any state law to the contrary by virtue of the Supremacy Clause of the United States Constitution."); *Advocacy, Inc. v. Horn*, No. A-08-CA-071-LY, slip op. (finding that reliance on regulatory language that PADD does not preempt state law is an unreasonable interpretation of the PADD Act).

Therefore, it is clear that the P&A statutes undoubtedly authorize the state P&A to have access to peer review records and incident reports in order to fulfill its mandate to conduct investigations into incidents of abuse and neglect of individuals with disabilities. It is equally clear that state statutes regarding discovery of peer review records do not provide a basis for refusing the P&A access to those records, as evidenced by the holdings of *all* of the federal

17

courts that have examined the issue. Consequently, Baptist's reliance on state peer review and quality assurance statutes as a basis for its refusal to turn over the requested peer review records and incident reports to DRC during discovery in this matter is without merit.

**D.     The Attorney-Client Privilege Does Not Provide a Basis for Baptist's Refusal to Turn Over Peer Review Records or Incident Reports**

Along with the above objections, Baptist also objected on the theory that the discoverable information "*may* be protected by the attorney-client privilege." The attorney-client privilege, however, does not protect the documents requested in this matter.

Attorney-client privilege is only applicable if certain criteria are first met, namely the communication must have taken place in order to obtain legal advice and must occur within the confines of an attorney and client relationship. *See e.g., Fisher v. United States,* 425 U.S. 391, 403 (1976); *Triple Five of Minn., Inc. v. Simon,* 212 F.R.D. 523, 527 (D. Minn. 2002). Further, the party asserting attorney-client privilege bears the burden of establishing that the privilege applies. *See Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir. 1985). Peer review records and incident reports are typically generated following injuries, deaths, or other incidents that are considered non-routine in the medical setting. These types of records are normally not prepared in anticipation of litigation or after seeking advice from legal counsel. Instead, these records are prepared in order to evaluate the quality of services offered to patients, to evaluate the care a patient received, or to document the occurrences of events that normally do not take place.

Baptist has come forth with no information as to why the attorney-client privilege would apply to the requested documents. Instead, Baptist's objection only casts doubt on the validity of asserting attorney-client privilege applying here by stating the privilege "may" apply. Clearly that is not the case in the matter at hand. Though DRC does not doubt that Baptist's counsel has seen the reports in question, DRC maintains that merely showing or providing the documents to

18

counsel does not automatically cloak the documents within the attorney-client privilege and protect them from being discoverable.  To find otherwise would allow Baptist's counsel the ability to cloak any number of documents with that privilege and would prevent the truth-seeking process.  As the courts have found, certain criterion must be met for attorney-client privilege to exist.  In this case, that criterion is not present.  Therefore, Baptist should be ordered to turn over the requested documents.

## CONCLUSION

For the reasons set forth above, DRC respectfully requests that the Court grants its Motion filed in this matter and order Baptist to provide the answers and information requested during discovery. Though Baptist has asserted that DRC is attempting to circumvent its burden of proof in the discovery process, nothing could be further from the truth.  DRC is, instead, attempting to gain access to the records and evidence that it is permitted to access pursuant to Rule 26 of the Federal Rules of Civil Procedure and applicable law analyzed above.

Baptist's objections to the Interrogatories and Requests for Production are without merit. HIPAA certainly does not prohibit disclosure of protected health information to a P&A.  In addition, Rule 26 has been, and continues to be, broadly construed when it comes to relevancy, and the information sought by DRC during discovery is undoubtedly relevant to the case at hand. Further, the Arkansas peer review and quality assurance statutes do not prohibit disclosure of peer review records or incident reports to the P&A.  The attorney-client privilege does not apply in this context. Therefore, DRC respectfully requests that the Court grants DRC's Motion and orders Baptist to provide answers and documents requested in *Plaintiff's First and Second Set of Interrogatories and Requests for Production*, to pay DRC's expenses and attorney's fees for bringing this motion, and for any other relief to which DRC is entitled.

Respectfully submitted,

*/s/ J. Paul Davidson*
J. Paul Davidson ABN #2006291
DISABILITY RIGHTS CENTER
OF ARKANSAS, INC.
1100 N. University
Ste. 201
Little Rock, AR 72207
Phone:  501-296-1775
Facsimile:  501-296-1779
pauldavidson@arkdisabilityrights.org

### CERTIFICATE OF SERVICE

I, J. Paul Davidson, do hereby certify that I have sent via:

☐ Hand-delivery
☐ Telefax
☑ Electronic mail
☐ U.S. Mail, postage prepaid
☐ Federal Court ECF System

this 17th day of January 2014, a true and complete copy of the forgoing to the following individuals:

Mr. Byron Freeland
Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.
425 W. Capitol Ave.
Ste. 1800
Little Rock, AR 72201
bfreeland@mwlaw.com

*/s/ J. Paul Davidson*
J. Paul Davidson